The testimony up until that fourth time that you're talking about where there was a relevance objection had only implicated Mr. Goings. It was making Mr. Goings look bad. There was, at the time, the government started questioning whether or not Mr. Cottier was involved is when I objected based on relevance. And it wasn't, Cottier wasn't involved in this through the testimony of Goings until that point. And at that point is when there was an objection based on relevance. Before that, all it was doing was, granted, possibly inflating the jury, but it was inflating the jury against Mr. Goings. He's the one who admitted that he had trained girls in the past. He's the one who admitted that it wasn't necessarily gang activity. This whole res gestae, the guys, is completely unfounded. It was just an attempt to inflame the jury. And the judge, again, in an attempt, probably out of desperation for not exactly knowing what was going on, I believe, made the situation much more worse. By insinuating to the jury that Mr. Cottier raped an underage girl, when the testimony that had been brought in before that statement was that a group of individuals were taking turns having sex with a girl in the bushes. There was no talk of force. There was no talk of age. Was a mistrial motion made when the judge, you allege, inflamed the jury unnecessarily? No, Your Honor. Well, isn't that the way to, about the only way to preserve the situation if, in fact, the judge made the error you're now articulating? I don't believe that's the only way, but I believe that is a way. What's the other way? We could argue that there's an abuse of discretion. You've got to ask the judge to put the genie back in the bottle, don't you? Your Honor, I agree, but Well, but that wasn't done. So as far as the judge knows, he had attempted to make the best of a surprising situation to the defendant's advantage. And how can we reverse for that? Your Honor, there's no way that Mr. Cottier could have had a fair trial when the judge isn't telling the jury. The judge essentially believes that Mr. Cottier may have raped an underage girl. But the judge wasn't given a chance to cure. And he did, Your Honor. I would argue at the end No, you're saying the cure was worse than the disease. That's the argument you're making this morning. That is correct. And nobody told the judge. You've just made it worse, right? You've got to correct your own poison. That's a true argument or a true statement, Your Honor. I believe the judge knew. So this is worse than plain error. It's unargued error. Wouldn't you agree that the fact that the judge is specifically stating to the jury that it's possible Cottier raped an underage girl is inflammatory and could be prejudicial? Well, didn't this jury find out that this woman was 30 years old at some point? And didn't they find out that this was a purely consensual course of conduct? And didn't they find out that those things, because the judge said, we have to fix this problem. Didn't that happen? It did, Your Honor. Right. And so in the end, what this jury knew is they were told they weren't to consider that this defendant that was involved in, he's uncharged in any criminal activity involving this woman, that it's undisputed that the activity involved with the woman was consensual and that she was 30 years old. There was a And so there's no evidence at the end, when the jury goes off to deliberate, that anyone could rationally believe anybody had anything to do with a minor woman, girl. I don't believe that that's, that there's no way that anybody could have that because the judge specifically stated his mindset that he believed that the jury could think that there was an underage girl that was raped. I agree that there was testimony after the fact, but the damage had been done. Thank you. Very well. We'll give you some time for rebuttal in light of our questioning. Okay. We'll hear from the government. Mr. Kelderman. Good morning. You may proceed. Good morning, Your Honor. May it please the Court and counsel, I'm Eric Kelderman on behalf of the United States. Does that lectern raise, or can you raise the microphone? I will. I will try to stay close to the microphone, Your Honor. Very well. Thank you. I'll just do these. I'll present my arguments in the order that they came up previously. The matter of the plea agreements and the factual basis statements, there are some arguments in the defense briefs indicating that this is some sort of sole practice in the district of South Dakota U.S. Attorney's Office that factual basis statements are prepared in support of plea agreements. In fact, Federal Rule of Criminal Procedure 11B3 requires that plea agreements be supported by factual basis. In the district of South Dakota, they happen to be a separate written document. I have seen plea agreements in other districts where the factual basis is part of the actual plea document itself. But, Joe, factual basis in different districts, the practice is very different. Sometimes it's taken question and answer by the judge. Sometimes it's laid in by a statement by counsel and then consented to or agreed to by the defendant. Sometimes a combination of both. Sometimes in writing. What strikes me as unusual is that somehow this factual basis statement gets in front of a jury, right? I mean, that to me is the somewhat baffling position because in all the courts that I've sat, and I've sat in a number of districts in our circuit as a trial judge, I've never seen that as a practice. So is this routine in South Dakota where these statements actually come into evidence? It — I can't say that it's routine or that it happens all the time, but it does happen at times. I know that it does. When cooperating with this — Does that happen anywhere else that you're aware of? Your Honor, I believe in my experience in the Northern Division and the Central Division of the District of South Dakota, I have seen it happen. I believe it is perhaps more frequent in the Western Division, and I can't say exactly why. It just strikes me as unusual, and it's a practice that seems to me to be fraught with danger, the possibility that these statements that are not exactly the words of the defendant come in as a sworn state — or of the witness come in as a sworn statement of the witness where the witness is unavailable because they're going to assert a Fifth Amendment privilege, and there's — it's an odd thing, and it — and just don't — you just don't see that in my experience anywhere. And, Your Honor, I guess I can't speak to that, but what I can say is that part of the rationale behind it, I believe, is that the plea agreement is coming in. And so you've got a cooperating witness, often in drug cases, but you have a cooperating witness. And part of the effort is to show — part of the effort in the rationale behind submitting them is to show that this witness has agreed to cooperate. This witness has been made no promises other than that their testimony can be considered later on. And that Rule 35 motion could come — Well, then put it in without the stipulation. And that could be done, Your Honor. Here, in this case, the documents went in — And why does it have to come in before — well, here it comes in, and then the witness doesn't test — doesn't testify because he's going to take the Fifth. That happened with one of them, Your Honor. The actual factual basis — The one that's troublesome. I'm sorry? That's the one that's most troublesome. In this case, it was the defense who also wanted to have these factual basis statements in. The defense wanted to use that strategy, as you pointed out, Judge, moments ago. Did the defense counsel read the stipulation sentence? They read the factual basis statement for both Mr. Goings and Mr. Steele. Including the signed by and so forth? I believe — I don't know if that opening paragraph actually was read. I believe it started with just what was asserted to be a factual basis statement. It is — I'm sorry. Go ahead. I was just going to try to find the page number where that happened, Your Honor. It was during the testimony of the defense investigator. Within two pages of each other in the transcript, the defense investigator read both factual basis statements, the factual portions of them. Was it received as an exhibit into evidence then, or was it received as a court exhibit? My question is, is it really true that this particular written statement then went back to the jury in the course of its deliberations? I don't believe that there was any limitations put on how the jury could use them. I believe that they did.  Again, they went in without objection from the defense. Well, the defendant offered it, right? The defendant offered the third one, or at least the defendant affirmatively consented to the factual basis statements coming in, was asked if there was any objection, no objection, Your Honor, with regard to all three factual basis statements. But the defense had a strategy. They wanted to show that these two statements by Steele and Goings were so similar that they couldn't possibly be true. And then they had a recording, a recording of their investigator and counsel in the jail with Mr. Steele, where Mr. Steele makes a comment, made a comment that something about it being BS, the factual basis statement, or something about it. It's not clear because the recording of that interview or the testimony about that interview never indicated that Mr. Steele said this was false, that his There's no context for exactly why he made that comment. But, again, the defense wanted to use the strategy of showing that these two statements were so similar that they couldn't be true for some reason, because they were signed by two different individuals. Again, they were shown, the testimony showed that these were signed and affirmed by the witnesses, except with regard to Mr. Steele. That one didn't come in quite the same way because he refused to take the stand or was going to take the fifth. He did not want to testify, and the district court allowed him to remain off the stand. But these are factual basis statements that are affirmed to be true by defense counsel. I'm sorry, by the defendants in each individual case. When were they admitted as evidence? With Goings, it was, I believe he was the second witness at trial. It was early on in his testimony. Well, if Steele didn't testify, why did it come in? If Goings' statement didn't come in until he testified? The court actually had a hearing with regard to Mr. Steele and brought him in. And the defense wanted to call him and the judge, I guess the judge, with the concurrence of the defense. Is the statement in evidence at that point? Not yet at that point. As I recall, wasn't it true that at that point the trial judge said that we need context so we understand what the statement is that's BS? And without the entire context, it doesn't make the jury is going to be utterly baffled. And didn't at that point the defense say it could come in? That's exactly right, Your Honor. That's a good paraphrase of exactly how it happened. That was the hearing with Mr. Steele. It was outside the presence of the jury. Because the defense wants to offer the recording, right? That's right. The defense wanted to offer the interview to show something about what Mr. Steele was saying was BS. And so the judge said, well, we need this to have the context for everything that Mr. Steele would be talking about or what would have been being referred to. With regard to the sexual encounter, the charges against the defendant were aiding and abetting second-degree murder and also conspiracy to commit assault. Both of those charges require in some way that the United States show a concert of activity, joint activity on behalf of the defendants in this case. The sexual encounter, which was clarified, as you noted, Judge Erickson, it was clarified that it was not a minor, that it was not a rape. It was just something that the men of this gang associated themselves with. Well, doesn't that make it all the more – in other words, your government was painting them as being especially bad people. Well, Your Honor, you – I mean, doesn't it strain credulity to say that the sexual activities had anything to do with the vendetta against the victim? Well, it all happened just a few minutes before. I'm sorry. It was a gang right, is what I was going to mention. It was something where it was being done as part of the gang. I believe Mr. Goings testified that it happened as part of what they did as a group. Isn't it fairly – There was overwhelming evidence of joint activity. Your Honor, I'm sorry. There was. The sequence of events was all joint activity. You didn't need everything these gangsters did before, during, and after this incident. Go ahead. Your Honor, it was very early in the testimony. It was very early in the evidence. Well, that makes it worse. And you knew what the evidence was going to come in at joint activity. What bothers me about this is really – is that this judge was never afforded the opportunity to do a Rule 403 balancing on this highly inflammatory prejudicial information, right? And when – even when we get to sidebar, there's a – I mean, there's a complete dropping of the ball by both lawyers. Nobody explains to the judge what was really going on there and what it was or how it was supposed to come in and what it was relevant to. If you read the sidebar, it's completely baffling. And at the end, Judge Viken is sitting there, well, I guess it's what either Judge Batty would have called res geste or something. It explains something. It's cats out of the bag now. We've got to figure out a way to fix it, right? And so what happened in the lawyering here was that nobody bothered to give this judge a heads up on this piece of evidence that really is so tangential as to have the slightest of weight and is very, very prejudicial. I submit no trial judge in the world would ever let this testimony in. They had a balancing been able to be done. Instead, what happens, the cat's out of the bag, and this judge is put in this untenable situation of trying to fix it. And that's on you, and it's on the defense lawyers. These lawyers let this system down. Your Honor, I can't speak exactly to the motives behind it, but I do know that the prosecutor explained to the Court that it was all about the concert of activity. It was about the joint activity by these defendants. It's not necessarily the defense burden to move in limine to preclude everything, but there was no motion in limine to preclude it. I don't know that a district judge knows every detail of everything that can come in at trial. I understand, Your Honor, and I know that you gave reasons. You know as well as I do that the trial judge, the only people in that courtroom that knows less than the trial judge are the jurors, right? I mean, you only know the facts that people have told you in the course of the filings of the prosecution and defense of the case. And if nobody bothers to tell you, you walk in and a train rolls through your courtroom, and now you are supposed to try and pick up the pieces. And there's no way that these lawyers didn't understand this evidence to be, you know, highly inflammatory. So why didn't somebody bring that to the judge's attention? I agree, Your Honor, that perhaps a warning could have happened. I don't have an explanation for why it did not happen. But, again, it was something that the United States knew that it had to prove that these men were acting in concert, that they were acting together. This is evidence that the United States had that tended to show that. It showed the aiding and abetting or that they were acting together and that they were co-conspirators. Well, what would the government have had had Judge Viken ruled this evidence out? Would you have given up? No, Your Honor, but it would have put on the facts of what happened. Correct, Your Honor. It was two separate trips to the quiver yard by the group with planning before the second trip that we're going to, you know, take weapons and surprise them and fight some more. I mean, they talk. They come back with machetes and sticks to beat people. I mean, there was plenty of concerted action here. You didn't need this. This was not an issue. This was pure inflammatory overkill. I can't see it any other way. Your Honor, to that I would respond that the evidence was overwhelming as it did come in. The evidence of the case was overwhelming, and this was something that the jury didn't I mean, you had third-party witnesses who saw the joint activity. They may not have seen every detail of the beating. True, Your Honor. You didn't need the cooperator's admissions. The district court did give a curative instruction. It addressed the matter right away, and then it asked for the clarifying testimony about the person, the woman involved in this sex, that she was an adult and that it was consensual. And so there was clarification of it as well. The district judge took care of it immediately and told the jury what it can be considered for and what it cannot be considered for. And isn't the issue then at this point, you know, as we do this analysis for plain error, is that is it capable of being fixed once it's out there? Isn't that really, at the end of the day, the question we've got to ask? May I respond, Your Honor? Of course. Or does it – what is the plain error rule? Does it seriously affect the integrity of the process? I mean, that's the question we as judges have to ask ourselves when we judge whether it's plain error to the point where it's reversible. Well, jurors are assumed, presumed to follow the instructions that are given to them. And so that was the action that was taken here. And so at this point, we have to presume that they did follow that instruction and that it was taken care of on the record at that time. Thank you, Your Honors. May I further – apparently we have no further – yes, you may complete your argument. Mr. Nelson, we'll give you three or four minutes for rebuttal or whatever time you believe is necessary in view of our questions to opposing counsel. Thank you, Your Honor. I appreciate that. In rebuttal, I'd like to go to what the government said about plenty of evidence in the record to show the group activity and the gang beating. I would argue that's not actually true. I think on first glance of the transcripts, it's possible you may actually get that insinuation, but that's likely from statements made in closing argument. If you really scrutinize the record, the only testimony about Mr. Cotier having the intent for a group or gang beating is extremely minimal. Mr. Goings uses the word we, the group, discussed. No, who was? I'm trying to remember. Who was the leader or the instigator of this trip with the machetes and all that? See, Your Honor, there's testimony that Mr. Cotier wanted to go up there. There's testimony that he may have been the leader of going up there. But where the confusion in this record is, is the intent. Well, wait a minute. The confusion. Think about this. Isn't Cotier the guy who said, we were punked? You guys were punked. We're going to go back up there and settle this. You've got two rival gangs. You just acted like you were just punked. Some witnesses put that in his mouth, right? Correct. And then they walk out with a machete and sticks. They're not going out there to sing songs at these guys. And it's arguable, Your Honor, that the machete wasn't known to be present in the discussion of going up there. It's arguable that the discussion was going to be a one-on-one fight and that it was Mr. Goings with the machete who he tested. There's testimony that he always had the machete with him, that he kept it in his pants. And he specifically said he keeps it as defense, to defend himself, and that he chops wood with it. Then there's also testimony. You know, you're going beyond the this is not rebuttal. You're now in the sufficiency of the evidence, which wasn't argued at the start in your preliminary argument. You're supposed to be rebutting on the sex activity, the government's joint activity argument. It's arguable that the government said that there's sufficient evidence without the sex activity. I agree. The sex activity is completely inflammatory. It was likely could have been handled much better, but it wasn't. And in this case, that information was brought to the jury. I don't see how Mr. Cottier could have a fair trial when the jury is hearing information like this, completely unrelated to the acts that he was charged with. And statements, again, in an effort to try to cure the problem, just made it worse. Statements by a judge insinuating to the jury that Mr. Cottier raped a minor girl. I mean, it's unfathomable. Well, we apparently have no further questions. We thank you for the argument, both sides for the argument. And the case is now submitted, and we will take it under consideration.